**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **LINZY CLAYTON AMIKER,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 5:26-cv-289-TES-CHW** |
| **TYRONE OLIVER, *et al.*,** | : | |
| **Defendants.** | : | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Linzy Clayton Amiker, a prisoner currently confined in Wilcox State Prison ("WSP") in Abbeville, Georgia, filed a complaint seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP") (ECF No. 2) and a motion to appoint counsel (ECF No. 3). Plaintiff's motion to appoint counsel is **DENIED**. Plaintiff's motion for leave to proceed IFP is **GRANTED**, and Plaintiff's complaint is now ripe for preliminary review. On that review, it is recommended that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

## MOTION FOR LEAVE TO PROCEED IFP

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). ECF No. 2. As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed IFP is **GRANTED**.

However, a prisoner allowed to proceed IFP must still pay the full amount of the

$350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in his trust account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I. Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account

exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

**II. Plaintiff's Obligations Upon Release**

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**MOTION TO APPOINT COUNSEL**

Plaintiff moves for appointment of counsel (ECF No. 3). Plaintiff claims appointed counsel is necessary due to the factual and legal complexity of the case, the number of defendants, his lack of legal training, difficulty in litigating the case as an indigent prisoner, and his failed efforts to independently obtain counsel. ECF No. 3 at 1-2.

"Appointment of counsel in a civil case is not a constitutional right." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (per curiam) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th

Cir. 1996)). In determining whether a case presents extraordinary circumstances, the Court considers

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's motion and—after applying the factors set forth above—concludes that the appointment of counsel is not justified. Plaintiff has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). As such, Plaintiff's motion for appointment of counsel (ECF No. 3) is **DENIED**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I. Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28

U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citation omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will

reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty*., 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g*., *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (per curiam) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II. Factual Allegations

Plaintiff's claims arise out of his incarceration at Wilcox State Prison. ECF No. 1 at 3. On September 4, 2025, at approximately 8:00 a.m., Plaintiff was assaulted by another inmate in Building L, resulting in a "shattered nasal passage and severe facial trauma." *Id.* at 9. At the time of the assault, no officers were present in the dorm or the designated security post. *Id.* Plaintiff sought medical treatment, and Defendant Unit Manager Wooten admitted him into the medical unit at 1:30 p.m. *Id.* at 9-10.

Defendant Dr. Bradford treated Plaintiff by providing him with an ice pack, Ibuprofen, and maximum strength nasal spray. *Id.* at 10. He prescribed Plaintiff nasal

spray multiple times. *Id.* Approximately two months later, after Plaintiff continued to complain of "discomfort," Bradford ordered x-rays. ECF No. 1 at 10. When the results came back, Bradford reviewed them and told Plaintiff, "[E]ven if you were in the free world, your nose would not be repaired for such a small fracture." *Id.* Sixty days later, Plaintiff requested a physical and was seen by another physician who referred him to Augusta State Medical Prison ("ASMP"). *Id.* On December 10, 2025, an ASMP surgeon stated that because of the delay, the nasal bones had "malunioned" and would need to be "surgically rebroken to attempt a repair." *Id.* Plaintiff was referred to an ear, nose, and throat doctor in Dublin, who told Plaintiff that the nasal spray he had been prescribed was addictive like cocaine and could "cause a hole in his nose." *Id.* The doctor discontinued the nasal spray and ordered new medications to see if Plaintiff would be able to breathe on his own before surgery. *Id.*

After he was seen by Dr. Bradford on September 4, 2025, Plaintiff was returned to Building L. ECF No. 1 at 11. When Plaintiff expressed fear of retaliation, Defendant Unit Manager Walker told him not to worry because she would "watch the camera." *Id.* The next day, September 5, 2025, Plaintiff was walking past Building F when another inmate stated to him, "If something happens to my homeboy or he gets moved, you did it and you're dead."[1] *Id.*

On September 8, 2025, at 8:30 a.m., Plaintiff went to the gate and informed Defendant Officer Spikes that he wanted protective custody. *Id.* Spikes told Plaintiff that

[1]Based on a grievance attached to Plaintiff's complaint, the unnamed inmate was referring to the inmate who assaulted Plaintiff on September 4, 2025. ECF No. 1-2 at 2.

it was "count time," but after Plaintiff persisted, Spikes told Plaintiff to go to Building D. *Id.* at 11-12. When Plaintiff arrived at Building D/E, Defendant Officer Butts asked Plaintiff why he was out during count, and Plaintiff told him that he needed protective custody. *Id.* at 12. Butts told Plaintiff to return to the gate where Walker was posted. ECF No. 1 at 12. When Plaintiff arrived at the gate, Walker told Plaintiff that the investigation of the September 4th incident determined that Plaintiff was assaulted after "taking up for a white boy who said n*****." *Id.* Walker told Plaintiff to go to intake, where Plaintiff was held in a "crowded" cell from 9:00 a.m. to 4:00 p.m. *Id.* Walker contacted the chief counselor to request a "swap" so that Plaintiff could move to K Building, but the chief counselor denied the request. *Id.*

At this point, Walker told Plaintiff that he might as well return to Building L until the next morning, but when Plaintiff stated that he would not go back, Defendant Captain Newsome said to place Plaintiff in Building H. *Id.* Plaintiff objected to this too, stating he needed protective custody. *Id.* In response, Defendant Unit Manager Conaway said to "put [Plaintiff] in the cell with inmate Gray, he assaulted his last roommate." ECF No. 1 at 12-13. Plaintiff states that despite knowing that Gray was a "violent predator," Defendants Bryant, Burnette, Walker, and Newsome did not intervene to place Plaintiff in protective custody. *Id.* at 13. Instead, Defendant Lieutenant Mitchell placed Plaintiff in J-2-236 with inmate Gray. *Id.*

Plaintiff remained in J-2-236 for 96 hours and was forced to sleep on a steel top bunk despite having a bottom-bunk profile. *Id.* Plaintiff had no mattress, pillow, medication, or personal property, and states that as a result, his "nasal passage collapsed,

and the bones fused in a permanent malunion." *Id.* Plaintiff handed a note to Defendant Warden Thomas on September 10, 2025—who passed it on to Defendant Officer Dominy— and his property was returned the next day, though most of it was "missing or swapped." *Id.* "For approximately one week, Plaintiff was subjected to aggression and theft by inmate Gray." ECF No. 1 at 13. After Gray "became increasingly oppressive and aggressive," Mitchell moved Plaintiff to another cell with an inmate who was "a known gang member." *Id.* at 14. This new cell allowed Plaintiff to have a bottom bunk. *Id.*

On October 11, 2025, Mitchell moved Plaintiff into yet another cell in J Building, with another gang member, and Plaintiff again was forced to use the top bunk. *Id.* When Plaintiff informed Defendant Officer Deese of the "error and issues," Deese refused to do anything. *Id.* Throughout Plaintiff's entire stay in Building J-2 segregation, staff failed to conduct the required 15-30 minute rounds, and during night and weekend shifts, the unit was frequently left unsupervised for hours at a time. *Id.* Plaintiff was released from segregation on October 31, 2025, and housed in D Building. ECF No. 1 at 15. Even though Plaintiff had a bottom-bunk profile, inmates informed him that there was a waiting list for a bottom bunk. *Id.* When Plaintiff filed a grievance, Thomas told him that he would be moved when a bottom bunk became available. *Id.* Despite this, when Plaintiff was later moved, he was again assigned a top bunk. *Id.*

## III. Plaintiff's Claims

Plaintiff lists eighteen defendants and raises claims for failure to protect, deliberate indifference to a serious medical need, and "state-created danger." *Id.* at 5, 8-9. For the reasons stated below, Plaintiff's complaint fails to state a claim.

A. Deliberate Indifference to Safety/Failure to Protect

1. *Deliberate Indifference to Safety/Failure to Protect Standard*

The Eleventh Circuit has held that the Eighth Amendment "impose[s] a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Mosley v. Zachery*, 966 F.3d 1265, at 1270 (11th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This "includes 'protecting prisoners from violence at the hands of other prisoners.'" *Id.* (quoting Farmer, 511 U.S. at 833). To state an Eighth Amendment claim for deliberate indifference to an inmate's safety, a prisoner must allege facts showing: (1) a substantial risk of serious harm; (2) each defendant's deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to [her] future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam) (quoting *Lane*, 835 F.3d at 1307). There are two ways for an inmate to make this showing. *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam). First, an inmate may proceed on a "particularized threat" theory by attempting to show "that [he] was the target of a specific threat or danger." *Id.* Second, the inmate may proceed on a "dangerous conditions" theory, which requires the inmate to "demonstrate that the prison conditions [he] was subjected to were so dangerous that they resulted in cruel and unusual

punishment." *Id.* Under either theory, the inmate must face "a 'strong likelihood' of injury, 'rather than a mere possibility[.]'" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

"To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) 'was subjectively aware that the inmate was at risk of serious harm'; (2) 'disregarded that risk'; and (3) 'acted with subjective recklessness as used in the criminal law.'" *Spradlin v. Toby*, No. 5:23-cv-328-MTT, 2024 WL 3881483, at *4 (M.D. Ga. Aug. 19, 2024) (quoting *Wade*, 106 F.4th at 1255). To satisfy the subjective awareness component, a plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and also dr[ew] the inference." *Marbury*, 936 F.3d at 1233 (quotation marks and citation omitted).

Under the particularized risk theory, an inmate must establish that he provided prison officials with enough details about a specific threat to show "that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Id.* at 1237. This standard does not require an inmate "to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm." *Id.* In a case relying on the threat of violence in a prison environment generally, "[i]nmates cannot simply rely on 'occasional or isolated attacks by one prisoner on another' but rather must prove 'confinement in a prison where violence and terror reign.'" *Vass v. Martin*, No. 5:21-CV-373-MTT, 2024 WL 3700194, at *6

(M.D. Ga. Aug. 6, 2024) (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014)).

Whether a risk has been disregarded is an objective inquiry, requiring a plaintiff to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury*, 936 F.3d at 1233 (quotation marks and omitted). To "prove that the defendant acted with subjective recklessness as used in the criminal law," a "plaintiff must show that the defendant was subjectively aware that his [or her] own conduct put the plaintiff at substantial risk of serious harm—with the caveat that, in any event, a defendant who responds reasonably to a risk, even a known risk, cannot be found liable under the Eighth Amendment[.]" *Wade*, 106 F.4th at 1255 (quotation marks and citations omitted).

As to causation, the third element necessary for a deliberate indifference to safety claim, "the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quotation marks and citation omitted). This inquiry "focuses . . . on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).

*2. Plaintiff Fails to State a Claim for Deliberate Indifference to Safety/Failure to Protect*

Plaintiff provides scant detail about the September 4, 2025, assault. He does not describe the events leading to the assault, how long the assault lasted, what exactly

occurred during the assault, whether he previously had any difficulties with his assailant, whether he had informed prison officials about the threat posed by the assailant, or any other particulars about the attack that could lead to a conclusion that Defendants were deliberately indifferent to his safety. At most, Plaintiff cites the absence of officers in the dormitory and security post at the time of the assault, ECF No. 1 at 9, but he does not provide enough information to show a causal connection between this absence and the assault or his injuries.[2] The fact that Plaintiff was assaulted is not alone sufficient to state a claim. *See Farmer*, 511 U.S. at 834 ("[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.").

Regarding events following the assault, Plaintiff also fails to state a claim. He complains about the refusal to place him in protective custody, but a prisoner does not have a constitutionally protected liberty interest in being placed in a particular prison or being given a particular custody classification, so long as the conditions of his confinement do not otherwise violate the Constitution. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Mathews v. Moss*, 506 F. App'x 981, 983 (11th Cir. 2013) (per curiam).

---

[2] The Eleventh Circuit has recognized that "pervasive staffing and logistical issues rendering prison officials unable to address near constant violence" can amount to a "specific feature[] of a facility" that "render[s] it particularly violent" for purposes of proving that prison officials were deliberately indifferent under a "dangerous conditions" theory. *Marbury*, 936 F.3d at 1235. In this case, however, Plaintiff has failed to present factual allegations to show "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm." *Id.* Further, Plaintiff does not allege sufficient facts about the assault to show how the officers' presence could have affected the outcome.

Otherwise, Plaintiff's factual allegations demonstrate that Defendants attempted to accommodate his request on September 8, 2025, to move to a different building, with Plaintiff rejecting one location because he wanted protective custody. ECF No. 1 at 12. Although Defendants did not accede to Plaintiff's specific request for protective custody, they did not return him to Building L where the assault had occurred. *Id.* at 9, 12-13.

Plaintiff also complains about being placed in a cell with inmate Gray, but he does not allege facts to show that cell assignment this placed him at risk of serious harm. The mere fact that Gray had attacked his former roommate does not by itself show he was a threat to Plaintiff. *See, e.g., Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (per curiam) (holding that prison officials' knowledge that plaintiff's cellmate "was a 'problem inmate' with a well-documented history of prison disobedience," who "had been prone to violence," and who was "act[ing] crazy, roaming his cell like a 'caged animal'" was not sufficient to show that prison officials were subjectively aware that cellmate posed substantial risk of serious harm to plaintiff). Other than vague references to Gray being "oppressive and aggressive," *id.* at 14, Plaintiff does not explain how his placement with Gray posed "a strong likelihood . . . rather than a mere possibility" of injury. *Brooks*, 800 F.3d at 1301; *see also Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006) (per curiam) ("General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference."). As it is, Plaintiff does not actually allege that Gray ever physically assaulted him. Similarly, while Plaintiff complains about subsequent placements with other gang members, ECF No. 1 at 14, he does not state facts showing that those inmates posed any specific threat to him or point to

any evidence that any named Defendant was subjectively aware of any potential related threat, and there is no indication that he was actually assaulted by any of those inmates.

Plaintiff further references a single threat made by an inmate while passing by another building for dinner, *id.* at 11, and mocking conduct by certain Defendants, *id.* at 10-11, but these verbal threats or taunts are also insufficient to support a claim of deliberate indifference to safety. *See Marbury*, 936 F.3d at 1236 ("The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." (quotation marks and citation omitted)); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam) ("[Plaintiff's] allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim." (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)); *Pope v. Talton*, No. 5:23-cv-00406-MTT-MSH, 2023 WL 7018268, at *3 (M.D. Ga. Oct. 25, 2023) ("The Constitution does not generally protect inmates against 'fear or emotional injury which results solely from verbal harassment or idle threats.'" (quoting *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991))); *Cummings v. Harrison*, 695 F. Supp. 2d 1263, 1272 (N.D. Fla. 2010) ("Generally, 'verbal threats, without more,' are insufficient 'to state a cause of action under the Eighth Amendment.'" (quoting *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998)).

Plaintiff seeks to hold certain Defendants liable solely because of their supervisory authority over WSP. "It is well-settled in [the Eleventh Circuit] that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis

of respondeat superior or vicarious liability." *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation omitted). Instead, supervisors who did not personally participate in the alleged constitutional violation can only be held liable under § 1983 if a causal connection exists between the supervisor's actions and a subordinate's conduct. *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023). This causal connection can be established if there is "a history of widespread abuse that put the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007) (per curiam) (citation omitted). To satisfy this standard, the constitutional deprivations "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* at 1329 (citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (citation omitted).

Plaintiff relies heavily on a Department of Justice ("DOJ") report about violence and staff shortages in Georgia Prisons to show that the widespread abuse circumstance for finding supervisory liability is satisfied.[3] ECF No. 1 at 5, 9, 14-15. Plaintiff does not

---

[3]Plaintiff has filed a request that the Court take judicial notice of the DOJ report under Rule 201(b) of the Federal Rules of Evidence. ECF No. 4 at 2. At this stage, however, it is unnecessary for Plaintiff to present evidence. Instead, the Court may consider Plaintiff's statements about the DOJ report as part of his allegations against Defendants. *See Harris v. DeBerry*, No. 1:23-CV-01505-JPB-LTW, 2023 WL 11959825, at *1 (N.D. Ga. Apr. 11, 2023) (denying motion for judicial notice of documents at initial screening as "unnecessary" and instead "consider[ing] such documents in the light viewed most favorable to [p]laintiff as part of his general allegations"). Therefore, Plaintiff's request is **DENIED AS MOOT.**

allege facts tying the systemic deficiencies described in the report to the injuries suffered by him. He also does not allege sufficient facts about the conditions at WSP to show that it was a "prison where violence and terror reign." *Harrison*, 746 F.3d at 1299. He mentions a single stabbing between two inmates in January 2026. ECF No. 1 at 15; *cf. Marbury v. Warden III*, 180 F.4th 1349, 1357 (11th Cir. 2026) (holding that evidence of nearly 200 inmate-on-inmate assaults over two years was sufficient to "create a genuine issue of material fact whether violence was the norm or something close to it" (internal quotation marks and citation omitted)). Thus, Plaintiff's allegations are insufficient to show that any of the supervisory Defendants are liable. *See KS Collins v. Jones*, N. 5:25-cv-451-MTT, 2026 WL 2030815, at *6 (M.D. Ga. July 14, 2026) (finding complaint failed to "connect specific findings in the DOJ report to Wilcox and the supervisory defendants" and did "not allege that . . . nine previous inmate deaths at Wilcox resulted from constitutional violations, conferring notice of widespread abuse").

Because Plaintiff fails to state a claim for deliberate indifference to safety, and therefore, this claim is subject to dismissal.[4]

---

[4]Plaintiff asserts a claim for "state-created danger." ECF No. 1 at 5. "A prisoner may not bring such claims under the notion of substantive due process, when a constitutional amendment 'provides an explicit textual source of constitutional protection against' that claim." *Robbins v. Jordan*, 2014 WL 1314939, No. 5:14-CV-9-HL-MSH, at *3 (M.D. Ga. Mar. 31, 2014) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Because Plaintiff was incarcerated at the time of all alleged events, the Eighth Amendment clearly provides a source of protection for his claims." *Id.* (first citing *Graham*, 490 U.S. at 395; and then citing *Longoria v. Texas*, 473 F.3d 586, 593 n.8 (5th Cir. 2006) (dismissing state-created danger claim).

B. Deliberate Indifference to a Serious Medical Need

Plaintiff asserts two claims for deliberate indifference to a serious medical need. The first is a claim against Dr. Bradford regarding the diagnosis and treatment of his broken nose. ECF No. 1 at 10. The second is the failure of prison officials to consistently provide him with a bottom bunk despite his bottom-bunk profile. *Id.* at 13-15. As to both claims, the complaint fails to allege facts sufficient to establish a claim for relief.

*1. Deliberate Indifference to Medical Need Standard*

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

As discussed previously, to establish the second element—deliberate indifference—the plaintiff must show that a prison official was subjectively aware of a substantial risk of serious harm to the plaintiff; that the official failed to respond to this known risk in an

objectively reasonable manner; and that the official acted with subjective recklessness as used in criminal law. *Wade*, 106 F.4th at 1253.

The plaintiff can establish the third element—causation—by demonstrating that the prison official could have taken some action to avert the plaintiff's injury but, through deliberate indifference, failed to do so. *Rodriguez v, Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007).

*2. Dr. Bradford*

Plaintiff alleges that Dr. Bradford was deliberately indifferent because he prescribed nasal sprays "multiple times" despite the labels warning not to use it past three days. ECF No. 1 at 10. He also asserts that Dr. Bradford "delayed imaging" for two months before ordering x-rays and then, when he received the results, told Plaintiff that even if he was in "the free world, [Plaintiff's] nose would not be repaired for such a small fracture." *Id.* Plaintiff contends that an ASMP surgeon stated that "because of the delay," the nose would have to be broken to attempt a repair. *Id.* Further, another doctor told him that the nasal spray was addictive "like cocaine" and could "cause a hole in his nose." *Id.*

Plaintiff's allegations are insufficient to state a claim against Dr. Bradford. He sufficiently alleges a serious medical need, but he does not show that Dr. Bradford was deliberately indifferent. According to Plaintiff's allegations, Dr. Bradford immediately treated Plaintiff with an ice pack, pain medication, and "major maximum strength nasal spray." *Id.* Dr. Bradford continued to prescribe nasal spray, and when Plaintiff complained of continuing discomfort, he ordered x-rays. *Id.* Based on the x-ray results, Dr. Bradford concluded that a surgical repair was not indicated. ECF No. 1 at 10.

While Plaintiff feels that Dr. Bradford should have discontinued his nasal spray and ordered an x-ray sooner, his decision not to do so does not constitute deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (holding that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and a "medical decision not to order an x-ray or like measures" does not state an Eighth Amendment claim); *Clas v. Torres*, 549 F. App'x 922, 924 (11th Cir. 2013) (per curiam) ("[A] doctor's choice of treatment and testing is a matter of medical judgment and does not state an Eighth Amendment deliberate indifference claim."); *Johnson v. Whitman*, No. 6:14–cv–00704–LSC, 2015 WL 877446, at *4 (N.D. Ala. Mar. 2, 2015) (finding plaintiff failed to state a claim based on an eight week delay in ordering a wrist x-ray where the plaintiff continued to receive medical treatment during that time and there was no allegation that defendants believed an x-ray was necessary).

Even if Dr. Bradford should have ordered an x-ray sooner and should have recommended surgery, Plaintiff's allegations at most show negligence, which is insufficient to support a claim of deliberate indifference. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition,' or a showing of medical malpractice does not establish deliberate indifference." *DiPietro v. Cooper*, No. 21-12874, 2023 WL 9018423, at *3 (11th Cir. Dec. 29, 2023) (per curiam) (quoting *Estelle*, 429 U.S. at 106); *see also Swain v. Junior*, 961 F.3d 1276, 1285-86 (11th Cir. 2020) (observing that "the deliberate-indifference standard sets an appropriately high bar" and thus allegations of "[o]rdinary malpractice or simple negligence won't do").

Finally, Plaintiff's disagreement and that of other medical providers with Dr. Bradford's course of treatment does not state a claim for deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (stating that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" is insufficient to state a claim for deliberate indifference); *Culver v. Sanders*, 608 F. Supp. 3d 1171, 1182-83 (N.D. Fla. 2022) ("[A] disagreement among providers does not establish deliberate indifference." (citing *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007))). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) (quoting *Harris*, 941 F.2d at 1507). Accordingly, it is recommended that Plaintiff's deliberate indifference to serious medical needs claim against Dr. Bradford be dismissed.

*3. Bottom-Bunk Profile*

Plaintiff further complains about the failure of WSP officials to consistently provide him a bottom bunk despite his having a bottom-bunk profile. ECF No. 1 at 13-15. Plaintiff has attached a document showing that he was given a bottom bunk profile on February 14, 2023, but the document shows no end date. ECF No. 1-6 at 2.

Plaintiff fails to state a claim regarding the bottom-bunk profile. He does not explain why he was originally given the bottom-bunk profile, and more significantly, he does not allege that any of the Defendants were aware that Plaintiff's medical condition necessitated use of a bottom bunk. A bare allegation that Defendants did not honor his

bottom-bunk profile, without a showing that they were deliberately indifferent to a serious medical need requiring such profile, is insufficient to state a claim. *See Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (per curiam) (affirming summary judgment where the plaintiff "never explicitly stated why he had a medical profile for a lower bunk," and the failure to assign him to a bottom bunk was no more than negligence); *Smith v. Wood*, No. 20-12918, 2021 WL 4452526, at *4 (11th Cir. Sept. 29, 2021) (per curiam) ("We have previously held . . . that an inmate who was transferred from a bottom bunk to a top bunk did not sufficiently plead deliberate indifference, even though he had a medical profile requiring him to sleep on the bottom bunk." (citing *Burley*, 257 F. App'x at 208-10)); *Carlton v. Core Civic*, No. CV623-022, 2023 WL 5166375, at *4 (S.D. Ga. May 12, 2023) (finding allegations that the defendant failed to accommodate a bottom-bunk profile did not state a claim), *recommendation adopted by* 2023 WL 4557736 (S.D. Ga. July 17, 2023); *Timmons v. Martin*, No. 6:17-cv-116, 2021 WL 1603614, at *6 (S.D. Ga. Mar. 5, 2021) ("[C]ase law indicates a failure to honor a bunk profile does not amount to deliberate indifference." (collecting cases)), *recommendation adopted by* 2021 WL 1146001 (S.D. Ga. Mar. 25, 2021); *Shaffer v. Maddox*, No. CV 314–070, 2014 WL 5878460, at *3 (S.D. Ga. Nov. 12, 2014) (finding that plaintiff failed to state a claim where he did not describe the medical condition that caused him to be given a bottom-bunk profile and he did not allege that the defendants knew of his condition that resulted in the profile).[5]

[5]Plaintiff alleges that one top-bunk assignment included a ninety-six hour period where he was "[f]orced to sleep on a steel top bunk without a mattress, pillow, bed linen, medication, or personal property," which Plaintiff suggests caused his nasal passage to collapse and bones to fuse "in a permanent malunion." ECF No. 1 at 13. Plaintiff does not explain how

C. Retaliation

Although retaliation is not identified as an independent claim, Plaintiff alleges that Defendants "subjected him to retaliatory housing." ECF No. 1 at 5. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). To state a claim for retaliation, a plaintiff must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech[.]" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (quoting *Smith*, 532 F.3d at 1276 (11th Cir. 2008). "As to the last element, the plaintiff's allegations must support a plausible finding that the defendant was 'subjectively motivated to discipline because the plaintiff complained of some of the conditions of his confinement.'" *Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 764

---

sleeping on a steel bunk caused his nasal passage to collapse or fuse, and he does not allege that he informed any Defendant that the steel bunk was somehow causing damage to his nose or otherwise implicated his serious medical needs. Furthermore, his allegation that he was required to sleep on a steel bunk for four days does not state an Eighth Amendment conditions-of-confinement claim. *See Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (per curiam) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *DeMon v. Foster*, No. CV 324-038, 2024 WL 4942412, at *4 (S.D. Ga. Oct. 24, 2024) (collecting cases and dismissing conditions of confinement claim where the plaintiff alleged that he was not provided a mattress or clean clothes for twenty-three days in a segregation cell), *recommendation adopted by* 2024 WL 4933355 (S.D. Ga. Dec. 2, 2024).

(11th Cir. 2020) (per curiam) (quoting *Smith*, 532 F.3d at 1278).

Plaintiff does not clearly identify the protected speech that he believes led to "retaliatory" housing assignments. Presumably, he is referring to his expressed concern for his safety and request for protective custody. However, Plaintiff's allegations fail to support a plausible finding that his housing assignments were the result of a subjective motivation to discipline him. According to Plaintiff's allegations, his housing changes resulted from his demand to leave his building and refusal to accept an alternate building because it did not satisfy his desire for protective custody. ECF No. 1 at 12-13. Plaintiff's contention that his subsequent housing assignments were retaliatory is purely conclusory and is insufficient to state a claim for retaliation. *See Leonard v. Monroe Cnty., Fla.*, 789 F. App'x 848, 851 (11th Cir. 2019) (per curiam) ("Plaintiff's unsupported conclusory assertion about a retaliatory motive is not enough to state a plausible claim for relief."); *Gonzalez v. Archer*, 725 F. App'x 739, 742-43 (11th Cir. 2018) (per curiam) (holding that plaintiff failed to state a retaliation claim where he "did not present facts that plausibly support a causal connection" between his grievances, the defendants, and their adverse actions).

D. Deprivation of Property

Finally, Plaintiff's complaint refers to theft of his property by both his fellow inmate, Gray, and also possibly by prison officials, and one of Plaintiff's requested remedies is reimbursement for "lost, swapped, or stolen" property. ECF No. 1 at 13, 16. To the extent Plaintiff seeks to assert a claim against Gray, he fails to state a claim under 42 U.S.C. § 1983 because Gray was not a state actor. *See Geter v. Baldwin State Prison*,

N0 5:16-cv-444-LJA, 2017 WL 11895922, at *4 (M.D. Ga. July 13, 2017) (recommending dismissal of property theft claim against other inmates (citing *Hale*, 50 F.3d at 1582)), *recommendation adopted by* 2018 WL 11667939 (M.D. Ga. Apr. 13, 2018). To the extent he seeks to assert a claim against prison officials, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Georgia provides such a post-deprivation remedy. *See Geter*, 2017 WL 11895922, at *5 (citing O.C.G.A. § 51-10-1). Therefore, the Court recommends that Plaintiff's claim for deprivation of property be dismissed.

## CONCLUSION

As set forth in detail above, Plaintiff's motion to appoint counsel (ECF No. 3) is **DENIED**. Plaintiff's motion to proceed IFP (ECF No. 2) is **GRANTED**, but the Complaint does not state a claim upon which relief may be granted. Accordingly, it is **RECOMMENDED** that the Complaint be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and/or § 1915A.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for

filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED and RECOMMENDED**, this 25th day of August, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge